UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

          Plaintiff,

    v.

SCOTT ALLAN CHAPPELLE,

          Defendant.

_____/

                             **INDICTMENT**

The Grand Jury charges:

## Introduction

At times material to this Indictment:

1.      SCOTT ALLAN CHAPPELLE resided in Okemos, Michigan and East Lansing, Michigan, within the Western District of Michigan.  CHAPPELLE was an attorney licensed to practice law in the State of Michigan.  CHAPPELLE studied finance and accounting, and previously was licensed as a Certified Public Accountant.

2.      CHAPPELLE operated the following companies involved in real estate development and property management in and around East Lansing, Michigan:  Terra Management Company ("Terra Management"), Strathmore Development Company Michigan LLC ("Strathmore Development"), and Terra Holdings LLC ("Terra Holdings").  Strathmore Development had an affiliated company, Terra Lawn and Snow Removal LLC ("Terra Lawn and Snow Removal").  CHAPPELLE was the president of Terra Management and Strathmore Development.  CHAPPELLE owned Terra Holdings.

3.      CHAPPELLE was responsible for, among other things, paying the companies' bills, entering income and expenses into the companies' bookkeeping system, and approving payroll.  CHAPPELLE also signed the companies' tax returns.

4.      CHAPPELLE also was involved with and controlled numerous other entities, including, but not limited to, Mid Michigan Rental Properties LLC ("Mid Michigan Rental Properties"), Abbott Road Commons LLC ("Abbott Road Commons"), Covenant Investment Group LLC ("Covenant Investment Group"), and Crouch Investment Group LLC ("Crouch Investment Group").  CHAPPELLE used these entities as nominees to own real property and conduct financial transactions.

5.      In or around November 2000, CHAPPELLE and his wife purchased a vacation house on Lake Michigan in Harbor Springs, Michigan ("the Harbor Springs property").  After the property was foreclosed upon by a bank, CHAPPELLE caused Crouch Investment Group to purchase the property in or around 2009.  After the property was foreclosed upon again by a second bank, CHAPPELE caused Crouch Investment Group to transfer the property to Mid Michigan Rental Properties.  In or around March 2014, CHAPPELLE caused Mid Michigan Rental Properties to transfer the property to CHAPPELLE and his wife for $1 to allow CHAPPELLE to obtain a mortgage loan secured by the property.

**Trust Fund Taxes**

6.     Federal law required employers to collect, truthfully account for, and pay

over to the Internal Revenue Service ("IRS") certain payroll taxes, including their

employees' withheld federal income taxes and Federal Insurance Contribution Act taxes

("FICA"), that is, Social Security and Medicare taxes.  These taxes were and are referred

to as Trust Fund Taxes because employers hold the withheld amounts in trust until paid

to the government.  Employers are also required to pay over to the IRS a matching share

of FICA taxes equal to the amount withheld from the employees' wages.

7.     A responsible person at a business was required to file IRS Forms 941,

Employer's Quarterly Tax Returns, ("Forms 941") on a quarterly basis.  A responsible

person must supply the IRS with information about the Trust Fund Taxes for a

particular quarter.  The responsible person was and is also required to pay over the

Trust Fund Taxes and the employer's matching share of FICA taxes to the IRS.

8.     When a business fails to pay over the Trust Fund Taxes withheld from the

wages of its employees and its matching share of FICA taxes, the IRS can assess the

unpaid taxes against the business.  If the business cannot pay the full amount of the

assessed liability at one time, the business can apply for a payment plan, called an

installment agreement, by submitting to the IRS an IRS Form 433-B, Collection

Information Statement for Businesses, ("Form 433-B"), among other documents.  The

person completing the Form 433-B on behalf of the business must truthfully report all

income, assets, and liabilities of the business on the Form 433-B and other documents

submitted to the IRS so that the IRS can evaluate the proposed installment agreement.

3

9.      If a person that the IRS determines to be a responsible person fails to pay over the Trust Fund Taxes, the IRS may impose a penalty of one hundred percent of the Trust Fund Taxes on each responsible person, individually.  This penalty is known as the Trust Fund Recovery Penalty ("TFRP").

10.     A person who owes TFRPs can attempt to negotiate a settlement called an Offer in Compromise by submitting to the IRS an IRS Form 656, Offer in Compromise, ("Form 656") and an IRS Form 433-A, Collection Information Statement for Wage Earners and Self-Employed Individuals, ("Form 433-A"), among other documents.  The person must truthfully report all of his income, assets and liabilities to the IRS on the Form 433-A and other documents submitted to the IRS so that the IRS can evaluate the Offer in Compromise and determine the person's ability to pay the taxes due.

**Chappelle's Non-Compliance with Trust Fund Tax Obligations**

11.     From in or around 1997 until in or around 2009, CHAPPELLE was the president of Terra Management.  For at least the second quarter of 2007 through the third quarter of 2009, CHAPPELLE failed to timely pay over to the IRS all of the Trust Fund Taxes withheld from the wages of Terra Management's employees and Terra Management's matching share of FICA taxes.  The IRS assessed TFRPs against CHAPPELLE as the responsible person for Terra Management for the first quarter of 2008 through the second quarter of 2009 and attempted to collect the unpaid taxes from CHAPPELLE individually.  The total amount of the TFRP assessments against CHAPPELLE for those quarters was more than $377,000.

12.     In or around September 2009, in response to the IRS's assessment of the TFRPs against CHAPPELLE, CHAPPELLE stopped operating his business under the name Terra Management and began operating his business under the name Strathmore Development.  Nothing about the operation of the business changed other than the name and tax identification number.

13.     For at least the fourth quarter of 2009 through the first quarter of 2011 and the first quarter of 2013 through the second quarter of 2014, CHAPPELLE failed to timely pay over to the IRS all of the Trust Fund Taxes withheld from the wages of Strathmore Development's employees and Strathmore Development's matching share of FICA taxes.  The IRS assessed Strathmore Development for the unpaid liability and attempted to collect the unpaid taxes from Strathmore Development.  Strathmore Development's total liability for these quarters, including both the Trust Fund Taxes and its matching share of FICA taxes, was more than $454,000.

14.     In or around 2015, in response to the IRS's assessment of unpaid Trust Fund Taxes against Strathmore Development and the IRS's efforts to collect those taxes, CHAPPELLE stopped operating his business under the name Strathmore Development and began operating his business under the name Terra Holdings.  Nothing about the operation of the business changed other than the name and tax identification number.

15.     On or about September 14, 2018, while CHAPPELLE was aware that he was under criminal investigation, CHAPPELLE caused a false Form 941 for Terra Holdings for the third quarter of 2016 to be mailed to an IRS Criminal Investigation ("IRS-CI") special agent for filing with the IRS.  On this return, which CHAPPELLE

signed under the penalties of perjury, CHAPPELLE falsely stated that Terra Holdings did not have any employees and did not pay any wages during the third quarter of 2016.  In fact, CHAPPELLE knew that Terra Holdings had employees and paid wages during that quarter because he approved submissions to a payroll company.   On the Form 941, CHAPPELLE also falsely claimed that Terra Holdings was entitled to a refund of all federal tax deposits that it made during the quarter.  In fact, Terra Holdings was not entitled to a refund and owed additional taxes.  On or about January 18, 2019, CHAPPELLE re-submitted and caused to be re-submitted to the IRS in Holtsville, New York the same false Form 941 for Terra Holdings for the third quarter of 2016.

**Chappelle's Efforts to Evade the Payment of the TFRPs**

16.     On or about September 9, 2010, CHAPPELLE submitted an Offer in Compromise to the IRS in an attempt to settle the TFRPs assessed against CHAPPELLE for the unpaid Trust Fund Taxes of Terra Management for less than the assessed amounts.  On or about September 9, 2010, CHAPPELLE also submitted a Form 433-A to the IRS on which he was required to provide truthful information about his finances.  In these documents, and in subsequent communications with the IRS employee evaluating the Offer in Compromise, CHAPPELLE made false representations about his income and assets.  Among other things, on the Form 433-A, CHAPPELLE failed to disclose that he owned the Harbor Springs property in the name of Crouch Investment Group. The Harbor Springs property was valued at over $2 million as of November 2009.

6

17.     On or about January 20, 2011, CHAPPELLE sent a letter to an IRS employee who was reviewing the Offer in Compromise, in which CHAPPELLE falsely stated that he did not own any real property besides his personal residence, when, in fact, CHAPPELLE owned the Harbor Springs property in the name of Crouch Investment Group.

18.     On or about March 1, 2011, the IRS rejected CHAPPELLE's Offer in Compromise dated September 9, 2010 and notified CHAPPELLE that the IRS "determined that [his] offer was submitted solely to hinder or delay [the IRS's] collection actions which are expected to collect significantly more than the amount [CHAPPELLE had] offered."

19.     On or about October 15, 2013, CHAPPELLE submitted a second Offer in Compromise to the IRS to settle the TFRPs assessed against CHAPPELLE for the unpaid Trust Fund Taxes of Terra Management for less than the assessed amounts.  On the Form 433-A attached to the Offer in Compromise, CHAPPELLE made the following false statements:

   a.     CHAPPELLE falsely stated that his total household income was $3,400 per month when, in fact, he knew he had household income in excess of $3,400 per month;

   b.     CHAPPELLE falsely stated that he had no income from partnerships or subchapter-S corporations when, in fact, he was paying personal expenses from bank accounts in the name of partnerships and subchapter-S

corporations that he controlled, including, but not limited to, Mid Michigan

Rental Properties and Covenant Investment Group;

      c.    CHAPPELLE falsely stated that Strathmore Development did not

have any notes receivable, when, in fact, Strathmore Development had notes

receivable; and

      d.    CHAPPELLE failed to disclose the Harbor Springs property, which,

at that time, he owned in the name of Mid Michigan Rental Properties.

20.    On or about September 22, 2014, the IRS rejected CHAPPELLE's Offer in

Compromise dated October 15, 2013 because CHAPPELLE owed individual income

taxes for 2012 and because CHAPPELLE was not compliant with paying over withheld

Trust Fund Taxes for Strathmore Development.

21.    On or about December 18, 2014, CHAPPELLE submitted a third Offer in

Compromise to the IRS to settle the TFRPs assessed against CHAPPELLE for the

unpaid Trust Fund Taxes of Terra Management for less than the assessed amounts.  On

the Form 433-A attached to the Offer in Compromise, CHAPPELLE made the following

false statements:

      a.    CHAPPELLE falsely stated that his total household income was

$8,000 per month when, in fact, he knew he had household income in excess of

$8,000 per month;

      b.    CHAPPELLE falsely stated that he had no income from

partnerships or subchapter-S corporations when, in fact, he was paying personal

expenses from bank accounts in the name of partnerships and corporations that

he controlled including, but not limited to, Mid Michigan Rental Properties and Covenant Investment Group;

      c.      CHAPPELLE falsely stated that Strathmore Development did not have any notes receivable, when, in fact, Strathmore Development had notes receivable;

      d.      CHAPPELLE failed to disclose the Harbor Springs property, which, at that time, he owned in his own name; and

      e.      CHAPPELLE falsely stated that he had not transferred any assets for less than their full value in the last 10 years when, in fact, in March 2014 CHAPPELLE caused the Harbor Springs property to be transferred from the name of Mid Michigan Rental Properties to his and his wife's names for $1.00.

22.      In addition to submitting false Forms 433-A to the IRS and making false oral and written representations to IRS employees about his and his companies' income and assets, CHAPPELLE attempted to prevent the IRS from collecting the assessed TFRPs by, among other means, paying personal expenses directly out of business bank accounts, acquiring new assets, including a one million dollar yacht, rather than paying his liabilities to the IRS, purchasing a condominium and a house in the name of nominee entities rather than his own name, and fraudulently causing the proceeds of a cash-out refinance to be paid to a third party instead of to CHAPPELLE directly.

**Efforts to Evade the Payment of Strathmore Development Company's Trust Fund Tax Liabilities**

23.      On or about June 16, 2014, CHAPPELLE submitted a letter to an IRS revenue officer who was attempting to collect Strathmore Development's unpaid Trust

Fund Taxes. In this letter, CHAPPELLE falsely stated, among other things, that Strathmore Development did not have any funds to pay the outstanding tax liability, when, in fact, Strathmore Development and its successor company, Terra Holdings, had bank deposits totaling more than five million dollars during 2014.

24. On or about June 16, 2014, CHAPPELLE submitted a Form 433-B to the IRS in an attempt to enter into an installment agreement with respect to Strathmore Development's assessed Trust Fund Tax liabilities. On the Form 433-B, which CHAPPELLE signed under the penalties of perjury, CHAPPELLE falsely reported that the business had no income and limited assets. CHAPPELLE also falsely stated that the business had no third-party payment processors and had no notes receivable. In fact, Strathmore Development used a third-party processor to process rental payments for its properties and had notes receivable. Finally, CHAPPELLE failed to disclose that Strathmore Development had any "business affiliations," when, in fact, Strathmore Development had at least one affiliated company, Terra Lawn and Snow Removal.

25. In addition to submitting a false Form 443-B to the IRS, CHAPPELLE attempted to prevent the IRS from collecting the assessed Trust Fund Taxes from Strathmore Development by, among other means, depositing checks payable to Strathmore Development and Terra Lawn and Snow Removal into a bank account in the name of Terra Holdings, and ceasing to operate his business as Strathmore Development and beginning to operate his business as Terra Holdings.

**False Statements to a Mortgage Company**

26.     In or around February 2014, CHAPPELLE applied for a mortgage loan

with Union Savings Bank ("USB") to refinance the mortgage on the Harbor Springs

property.  In connection with this mortgage, on or about February 12, 2014,

CHAPPELLE signed a Uniform Residential Loan Application.  On this application,

CHAPPELLE falsely stated that he was not a party to a lawsuit, when, in fact, he was a

party to at least two lawsuits at that time.  CHAPPELLE also falsely stated that he was

not delinquent on any federal debts, when, in fact, as of the date of the application he

owed individual income taxes and TFRPs.

27.     In connection with the mortgage application, CHAPPELLE submitted to

USB fraudulent bank statements for Strathmore Development's Chase bank account

ending -0594.  These bank statements represented that Strathmore Development had

significantly more money in its account than it actually had.  For example, on the

statement covering the period January 1 through January 31, 2014, the statement that

CHAPPELLE submitted to USB falsely represented that the ending balance in account -

0594 was $711,929.05, when in fact the true balance in the account at that time was

$10,929.05.

28.     On the Uniform Residential Loan Application and in subsequent

documents CHAPPELLE submitted to USB related to the mortgage loan, CHAPPELLE

falsely represented that a company called Chasco Management and Lending Services

held a lien on the Harbor Springs property that needed to be satisfied with the proceeds

of the loan.  As a result of these false representations, the bank wired a portion of the

mortgage amount, namely: $642,364.75, to a bank account in the name of Crouch

Investment Group instead of to CHAPPELLE individually. CHAPPELLE then

transferred funds from the Crouch Investment Group account to bank accounts that

CHAPPELLE controlled, including accounts in his name and the name of Strathmore

Development. CHAPPELLE also used a portion of the funds to make payments on

loans on properties owned by entities CHAPPELLE controlled.

29. The false and fraudulent statements and documents influenced USB's

decision to approve a mortgage loan in the amount of $2,250,000.

**False Statements to IRS-CI Agents**

30. On or about May 11, 2016, IRS-CI special agents interviewed CHAPPELLE

in connection with the criminal investigation of his tax liabilities. During that

interview, CHAPPELLE made false statements to the special agents about, among other

things, his assets.

31. During the interview with IRS-CI special agents, CHAPPELLE falsely

stated that he had not personally purchased any real estate in the last three years. In

fact, in August 2015, CHAPPELLE purchased a condominium in East Lansing,

Michigan in his own name, and, in April 2016, CHAPPELLE purchased a house in

Powell, Ohio in the name of Abbott Road Commons. CHAPPELLE resided in the house

in Powell, Ohio with his girlfriend and her children.

32. During the interview with IRS-CI special agents, CHAPPELLE also falsely

stated that his son lived in the East Lansing, Michigan condominium and that the

mortgage on the property was paid for primarily with his son's student loan funds. In

fact, CHAPPELLE's son did not live in the condominium and the mortgage payments between October 2015 and May 2016 were made with funds from Mid Michigan Rental Properties.

<u>COUNT 1</u>
**(Attempt to Evade or Defeat Payment of Tax)**

33. Paragraphs 1 through 25 and 28 of this Indictment are realleged and reincorporated herein.

34. Beginning on or about September 9, 2010 and continuing until the date of this Indictment, in the Southern Division of the Western District of Michigan and elsewhere, the defendant,

**SCOTT ALLAN CHAPPELLE,**

willfully attempted to evade and defeat the payment of the Trust Fund Recovery Penalties, and associated penalties and interest, due and owing by him to the United States as a responsible person for Terra Management for the first quarter of 2008 through the second quarter of 2009, by committing the following affirmative acts, among others:

    a. Signing and submitting, and causing to be submitted, to the IRS false Forms 433-A;

    b. Making and causing to be made false oral and written statements to IRS employees about his income and assets and the income and assets of Strathmore Development;

    c. Paying personal expenses from business bank accounts;

    d.  Purchasing real and personal property and paying other personal expenses while representing that he did not have sufficient funds to pay the TFRPs;

    e.  Purchasing real property in the names of entities instead of in his own name; and

    f.  Causing Union Savings Bank to wire a portion of the proceeds of a cash-out refinance to a bank account in the name of a third party instead of to an account in CHAPPELLE's name.

**26 U.S.C. § 7201**

## COUNT 2
### (Attempt to Evade or Defeat Payment of Tax)

35.    Paragraphs 1 through 25 of this Indictment are realleged and reincorporated herein.

36.    Beginning on or about June 16, 2014 and continuing until the date of this Indictment, in the Southern Division of the Western District of Michigan and elsewhere, the defendant,

**SCOTT ALLAN CHAPPELLE,**

willfully attempted to evade and defeat the payment of withheld Trust Fund Taxes, the matching share of FICA taxes, and associated penalties and interest, due and owing by Strathmore Development Company, which had its principal place of business in East Lansing, Michigan, to the United States of America for the third and fourth quarters of 2013, by committing the following affirmative acts, among others:

14

    a.   Signing and submitting a false Form 433-B to the IRS;

    b.   Making and causing to be made false oral and written statements to IRS employees about Strathmore Development's income and assets;

    c.   Depositing checks payable to Strathmore Development and Terra Lawn and Snow Removal into bank accounts in the name of Terra Holdings; and

    d.   Ceasing operating his business as Strathmore Development and beginning to operate the same business as Terra Holdings.

**26 U.S.C. § 7201**

## COUNT 3
### (Filing a Materially False Document)

37.    Paragraphs 1 through 25 of this Indictment are realleged and reincorporated herein.

38.    On or about June 16, 2014, in the Southern Division of the Western District of Michigan and elsewhere, the defendant,

**SCOTT ALLAN CHAPPELLE,**

willfully made and subscribed an IRS Form 433-B, Collection Information Statement for Businesses, with respect to Strathmore Development, which was verified by a written declaration that it was made under the penalties of perjury. That Form 433-B, which was filed with the Internal Revenue Service, (1) falsely reported in Section 1, Line 5 that Strathmore Development did not have any third-party payment processors, whereas, as he then and there well knew, Strathmore Development used a third-party processor to process rental payments; (2) falsely reported in Section 3, Line 13 that Strathmore

Development did not have any business affiliations, whereas, as he then and there well knew, Strathmore Development had at least one affiliated company; and (3) falsely reported in Section 4, Line 18 that Strathmore Development did not have any notes receivable, whereas, as he then and there well knew, Strathmore Development had notes receivable.

**26 U.S.C. § 7206(1)**

## COUNT 4
### (Filing a Materially False Document)

39.     Paragraphs 1 through 25 of this Indictment are realleged and reincorporated herein.

40.     On or about December 18, 2014, in the Southern Division of the Western District of Michigan and elsewhere, the defendant,

### SCOTT ALLAN CHAPPELLE,

willfully made and subscribed an IRS Form 433-A, Collection Information Statement for Wage Earners and Self-Employed Individuals, with respect to the Trust Fund Recovery Penalties assessed against CHAPPELLE as a responsible person for Terra Management, which was verified by a written declaration that it was made under the penalties of perjury.  That Form 433-A, which was filed with the Internal Revenue Service, (1) falsely reported in Section 3, that CHAPPELLE's only real property was his personal residence in Okemos, Michigan and a boat slip in Bay Harbor, Michigan, whereas, as he then and there well knew, he also owned the Harbor Springs property; (2) falsely reported in Section 4, that Strathmore Development did not have any notes receivable, whereas, as he then and there well knew, Strathmore Development had notes

16

receivable; (3) falsely reported in Section 6, that CHAPPELLE's monthly household income was $8,000 and that he did not have any income from partnerships or subchapter-S corporations, whereas, as he then and there well knew, CHAPPELLE's monthly income was in excess of $8,000 and he paid personal expenses from bank accounts in the names of partnerships and subchapter-S corporations; and (4) falsely reported in Section 8, that he had not transferred any assets for less than their full value in the last 10 years whereas, as he then and there well knew, CHAPPELLE had transferred and caused the transfer of the Harbor Springs property from Mid Michigan Rental Properties to his and his wife's names for $1.00 in March 2014.

**26 U.S.C. § 7206(1)**

## COUNT 5
### (Filing a Materially False Tax Return)

39.     Paragraphs 1 through 25 of this Indictment are realleged and reincorporated herein.

40.     On or about September 13, 2018, in the Southern Division of the Western District of Michigan and elsewhere, the defendant,

### SCOTT ALLAN CHAPPELLE,

willfully made and subscribed an IRS Form 941, Employer's Quarterly Federal Tax Return, for Terra Holdings, for the third quarter of 2016, which was verified by a written declaration that it was made under the penalties of perjury.  That Form 941, which was filed with the Internal Revenue Service, reported that Terra Holdings had zero employees, paid $0 in wages, and was entitled to a refund in the amount of $44,842, whereas, as CHAPPELLE then and there well knew, Terra Holdings had

employees to whom it paid wages during the quarter and Terra Holdings was not entitled to a refund.

**26 U.S.C. § 7206(1)**

## COUNT 6
### (False Statement)

41.     Paragraphs 1 through 25 and 30 through 32 of this Indictment are realleged and reincorporated herein.

42.     On or about May 11, 2016, in the Southern Division of the Western District of Michigan, the defendant,

### SCOTT ALLAN CHAPPELLE,

knowingly and willfully made a materially false, fictitious, and fraudulent statement and representation in a matter within the jurisdiction of the Government of the United States, by stating and representing to special agents of IRS-CI that he had not personally purchased any real estate in the last three years.  That statement and representation was false, fictitious, and fraudulent because, as CHAPPELLE then and there knew, he had purchased a condominium in East Lansing, Michigan in August 2015 in his own name and he had purchased a house in Powell, Ohio in April 2016 in the name of Abbott Road Commons.

**18 U.S.C. § 1001(a)(2)**

## COUNT 7
### (False Statement)

43.     Paragraphs 1 through 25 and 30 through 32 of this Indictment are realleged and reincorporated herein.

44.     On or about May 11, 2016, in the Southern Division of the Western District of Michigan, the defendant,

**SCOTT ALLAN CHAPPELLE,**

knowingly and willfully made a materially false, fictitious, and fraudulent statement and representation in a matter within the jurisdiction of the Government of the United States, by stating and representing to special agents of IRS-CI that his son lived in the East Lansing condominium and that the mortgage on the property was paid for primarily with his son's student loans.  That statement and representation was false, fictitious, and fraudulent because, as CHAPPELLE then and there knew, his son did not live in the East Lansing condominium and the mortgage was paid for with funds from Mid Michigan Rental Properties.

**18 U.S.C. § 1001(a)(2)**

## COUNT 8
**(Bank Fraud)**

45.     Paragraphs 1 and 26 through 29 of this Indictment are realleged and reincorporated herein.

46.     In or around February and March 2014, in the Southern Division of the Western District of Michigan and elsewhere, the defendant,

**SCOTT ALLAN CHAPPELLE,**

knowingly executed a scheme and artifice to defraud Union Savings Bank ("USB"), a federally-insured financial institution, and to obtain money and funds owned by and under the custody and control of USB, by means of false and fraudulent pretenses,

representations, and promises, concerning material facts and matters in connection with

a mortgage loan for the Harbor Springs property.

47.    It was part of the scheme that CHAPPELLE made false representations on

a Uniform Residential Loan Application, including but not limited to the following:

   a.    CHAPPELLE falsely represented in Part VIII, Question d that he

was not a party to a lawsuit, when, in fact, he was a party to at least two lawsuits;

and

   b.    CHAPPELLE falsely represented in Part VIII, Question f that he

was not delinquent or in default on any federal debt, when, in fact, he owed

individual income taxes and TFRPs to the IRS.

48.    It was further part of the scheme that CHAPPELLE submitted to USB

fraudulent bank statements for Strathmore Development's account ending -0594 which

purported to show that Strathmore Development had substantially more money in its

bank account than it actually had.

49.    It was further part of the scheme that CHAPPELLE falsely represented to

USB that Chasco Management Lending Services held a lien against the property that

was the subject of the mortgage loan and thereby caused USB to wire a portion of the

mortgage loan to a third party instead of to CHAPPELLE.

**18 U.S.C. § 1344(2)**

A TRUE BILL

_____

GRAND JURY FOREPERSON

ANDREW BYERLY BIRGE
United States Attorney

_____

TIMOTHY P. VERHEY
Assistant United States Attorney