UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

- - - - - - - - - - - - - -

UNITED STATES OF AMERICA,   No. 1:20-CR-00079

    Plaintiff,

                                        Hon. Jane M. Beckering
v.                                     U.S. District Judge

SCOTT ALLAN CHAPPELLE,

    Defendant.
_____/

## PLEA AGREEMENT

This constitutes the plea agreement between Scott Allen Chappelle ("the defendant") and the United States Attorney's Office for the Western District of Michigan and the Department of Justice, Tax Division (collectively "the government"). The terms of the agreement are as follows:

1.     <u>Plea to Count One.</u>    The defendant agrees to plead guilty to Count One of the Indictment, which charges him with tax evasion, in violation of 26 U.S.C. § 7201. The government will move to dismiss Counts Two through Eight of the Indictment at the time of sentencing.

2.     <u>Defendant Understands the Crime.</u>    In order for the defendant to be guilty of violating Title 26, United States Code, Section 7201, the following must be true: (1) the defendant committed an affirmative act constituting an attempt to evade or

defeat the payment of a tax; (2) there was an additional tax due and owing; and (3) the defendant acted willfully.

The defendant is pleading guilty because he is guilty of the charge described above.

3. <u>The Defendant Understands the Penalties.</u> The statutory maximum sentence that the Court can impose for a violation of Title 26, United States Code, Section 7201 is five years in prison; a three-year period of supervised release; a fine of $250,000, or twice the gross gain or gross loss resulting from the offense, whichever is greater; the costs of prosecution; and a mandatory special assessment of $100.

The defendant agrees to pay the special assessment at or before the time of sentencing unless he affirmatively demonstrates to the Court that he lacks the ability to pay.

4. <u>Tax Restitution (Payment of Taxes Owed).</u>

a. The defendant agrees to pay restitution to the Internal Revenue Service (IRS) in the total amount of the tax loss found by the Court at sentencing, less any payments made by the defendant subsequent to the commission of the offense but prior to the date of sentencing. The restitution amount will also include interest calculated through the date of sentencing, pursuant to 18 U.S.C. § 3663(a)(3). The defendant understands and agrees that this figure does not include interest under 26 U.S.C. § 6601, which will be assessed by the IRS pursuant to Title 26.

2

b. The defendant agrees that the total amount of restitution reflected in this agreement results from defendant's willful conduct.

c. The defendant agrees that restitution is due and payable immediately after the judgment is entered and is subject to immediate enforcement, in full, by the United States. If the Court imposes a schedule of payments, defendant agrees that the schedule of payments is a schedule of the minimum payment due, and that the payment schedule does not prohibit or limit the methods by which the United States may immediately enforce the judgment in full. The IRS will use the amount of restitution ordered as the basis for a civil assessment under 26 U.S.C. § 6201(a)(4). The defendant does not have the right to challenge the amount of this restitution-based assessment. See 26 U.S.C. § 6201(a)(4)(C). Neither the existence of a restitution payment schedule nor defendant's timely payment of restitution according to that schedule will preclude the IRS from immediately collecting the full amount of the restitution-based assessment. Interest on the restitution-based assessment will accrue under 26 U.S.C. § 6601 from the last date prescribed for payment of the tax liability that is the subject of the restitution-based assessment to the date that the IRS receives full payment.

d. The defendant is entitled to receive credit for restitution paid pursuant to this plea agreement against those assessed civil tax liabilities due and owing for the same periods for which restitution was ordered. The defendant understands and agrees that the plea agreement does not resolve the defendant's civil

tax liabilities, that the IRS may seek additional taxes, interest and penalties from defendant relating to the conduct covered by this plea agreement and for conduct relating to another time period, and that satisfaction of the restitution debt does not settle, satisfy, or compromise defendant's obligation to pay any remaining civil tax liability. The defendant authorizes release of information to the IRS for purposes of making the civil tax and restitution-based assessments.

    e. The defendant understands that he is not entitled to credit with the IRS for any payment until the payment is received by the IRS.

    f. If full payment cannot be made immediately, the defendant agrees to make a complete and accurate financial disclosure to the IRS on forms prescribed by the IRS (including, but not limited to, IRS Form 433-A and Form 433-B, as appropriate), and to disclose to the IRS any and all additional financial information and financial statements provided to the probation office. The defendant also agrees to provide the above-described information to the probation office.

    g. If the defendant makes a payment of restitution prior to sentencing, the payment will be applied as a credit against the restitution ordered pursuant to this paragraph. The defendant agrees that he will sign IRS Form 870, Form 2504, or other appropriate form enabling the IRS to make an immediate assessment of the liability underlying the restitution agreed to in this paragraph. The defendant agrees that he will not claim a refund of the payment or otherwise challenge the existence or amount

of the tax liability underlying the restitution agreed to in this paragraph. If the amount of restitution has not already been reduced to account for any such payments, the government agrees that the amount of the restitution to be ordered by the court shall be reduced by a payment made in conformity with this provision.

      h.    The defendant agrees to send all payments made pursuant to the court's restitution order to the Clerk of the Court at the following address:

> 399 Gerald R. Ford Federal Building
> 110 Michigan Street, NW
> Grand Rapids, MI 49503

With each payment to the Clerk of the Court made pursuant to the District Court's restitution order, the defendant will provide the following information:

      i.    The defendant's name and Social Security number;

      ii.    The District Court and the docket number assigned to this case;

      iii.    Tax year(s) or period(s) for which restitution has been ordered; and

      iv.    A statement that the payment is being submitted pursuant to the District Court's restitution order.

The defendant agrees to include a request that the Clerk of the Court send the information, along with defendant's payments, to the IRS address below:

IRS - RACS
Attn: Mail Stop 6261, Restitution
333 W. Pershing Ave.
Kansas City, MO 64108

The defendant also agrees to send a notice of any payments made pursuant to this agreement to the IRS at the preceding address. The defendant understands and agrees that interest imposed by Title 26 will continue to accrue until the payment is actually received by the IRS.

    i. Prior to sentencing, the defendant will file with the IRS an amended Form 941, Employer's Quarterly Federal Tax Return, for Terra Holdings LLC for the third quarter of 2016 and pay any additional taxes due. If the defendant cannot pay the liability prior to sentencing, he agrees that any unpaid amount shall be included in his restitution obligation.

5.   <u>Supervised Release Defined.</u> Supervised release is a period of time following imprisonment during which the defendant will be subject to various restrictions and requirements. The defendant understands that if he violates one or more of the conditions of any supervised release imposed, he may be returned to prison for all or part of the term of supervised release, which could result in the defendant serving a total term of imprisonment greater than the statutory maximum stated above.

6.   <u>Factual Basis of Guilt.</u> The defendant and the government agree and stipulate to the following statement of facts which need not be proven at the time of the plea or sentencing:

a. The defendant is an attorney and former Certified Public Accountant who operated companies involved in real estate development and property management in and around East Lansing, Michigan, including, but not limited to Terra Management Company ("Terra Management"), Strathmore Development Company Michigan LLC ("Strathmore Development"), and Terra Holdings LLC ("Terra Holdings"). Strathmore Development had an affiliated company, Terra Lawn and Snow Removal LLC ("Terra Lawn and Snow Removal"). The defendant was the president of Terra Management and Strathmore Development. The defendant owned Terra Holdings.

*Tax Evasion*

b. For at least the second quarter of 2007 through the third quarter of 2009, CHAPPELLE failed to timely pay over to the IRS all of the Trust Fund Taxes withheld from the wages of Terra Management's employees and Terra Management's matching share of Federal Insurance Contribution Act (FICA) taxes. The IRS assessed Trust Fund Recovery Penalties (TFRPs) against the defendant as the responsible person for Terra Management for the first quarter of 2008 through the second quarter of 2009 and attempted to collect the unpaid taxes from the defendant individually.

c. Beginning on or about September 9, 2010, the defendant willfully attempted to evade and defeat the payment of the TFRPs assessed against him as the responsible person for Terra Management, along with associated penalties and interest,

7

for the first quarter of 2008 through the second quarter of 2009 by committing the following affirmative acts:

   i.  In connection with attempts to compromise his assessed TFRP liabilities, the defendant submitted four false Forms 433-A, Collection Information Statements for Wage Earners and Self-Employed Individuals, to the IRS. On these Forms 433-A, which the defendant signed under the penalties of perjury, the defendant made false statements about his income and assets, including failing to disclose a vacation home that he owned in Harbor Springs, Michigan in the name of nominees.

   ii.  The defendant paid personal expenses from business bank accounts, including mortgage payments on his personal residence in Michigan, a condominium, and a house in which he resided with his girlfriend in Ohio; college tuition for his children; personal credit card bills; life insurance premiums; car payments for himself and at least one child; and expenses associated with boats that he owned. The defendant made these payments despite representing to the IRS that he lacked sufficient funds to pay his TFRP liabilities.

   iii.  The defendant purchased and maintained real property in nominee names instead of his own name, including: a vacation home in Harbor Springs, Michigan, a condominium in Lansing, Michigan, and a house in Powell, Ohio.

  d.  For at least the fourth quarter of 2009 through the first quarter of 2011 and the first quarter of 2013 through the second quarter of 2014, the defendant

failed to timely pay over to the IRS all of the Trust Fund Taxes withheld from the wages of Strathmore Development's employees and Strathmore Development's matching share of FICA taxes. The IRS assessed Strathmore Development for the unpaid liability and attempted to collect the unpaid taxes from Strathmore Development.

e. Beginning on or about June 16, 2014, the defendant willfully attempted to evade and defeat the payment of Strathmore Development's assessed employment tax liability, along with associated interest and penalties, by committing the following affirmative acts:

i. In connection with an attempt to enter into an installment agreement with the IRS regarding Strathmore Development's assessed liabilities, the defendant submitted a Form 433-B, Collection Information Statement for Businesses, to the IRS. On this Form 433-B, which the defendant signed under the penalties of perjury, the defendant made false statements about Strathmore Development's business operations, including failing to disclose affiliated business entities.

ii. The defendant deposited checks payable to Strathmore Development and Terra Lawn and Snow Removal into a bank account in the name of Terra Holdings.

iii. In or around 2015, the defendant ceased operating his real estate business under the name Strathmore Development and began operating under the name Terra Holdings.

*False Statements*

    f.    On May 11, 2016, special agents of IRS Criminal Investigation (IRS-CI) interviewed the defendant as part of the criminal investigation of the defendant's tax misconduct. During that interview, the defendant made at least two false statements about his assets:

        i.    The defendant falsely stated that he had not personally purchased any real property in the last three years, when, in fact, in August 2015, the defendant purchased a condominium in East Lansing, Michigan in his own name, and, in April 2016, the defendant purchased a house in Powell, Ohio in the name of a nominee.

        ii.    The defendant falsely stated that he and his wife bought the East Lansing, Michigan condominium for his son to live in while attending Michigan State University and that the mortgage on the property was paid for primarily with his son's student loan funds. In fact, he and his wife did not buy the condominium for the defendant's son to live in and the mortgage payments between October 2015 and May 2016 were made with funds from a nominee entity.

*False Tax Return*

    g.    On or about September 14, 2018, while the defendant was aware that he was under criminal investigation, the defendant caused a false Form 941, Employer's Quarterly Federal Tax Return, for Terra Holdings for the third quarter of

2016 to be mailed to an IRS-CI special agent for filing with the IRS. On this return, which the defendant signed under the penalties of perjury, the defendant falsely stated that Terra Holdings did not have any employees and did not pay any wages during the third quarter of 2016. In fact, the defendant knew that Terra Holdings had employees and paid wages during that quarter because he approved submissions to a payroll company. On the Form 941, the defendant also falsely claimed that Terra Holdings was entitled to a refund of all federal tax deposits that it made during the quarter. The defendant asked the IRS to apply the refund to the outstanding Trust Fund liabilities of Terra Management Company for the tax periods ended March 31, 2008 through September 30, 2009, inclusive. In fact, Terra Holdings was not entitled to a refund and owed additional taxes.

*Mortgage Fraud*

h.    In or around February 2014, the defendant applied for a mortgage loan with Union Savings Bank ("USB") to refinance the mortgage on his vacation house Harbor Springs, Michigan. In connection with this mortgage, on or about February 12, 2014, the defendant signed a Uniform Residential Loan Application on which he falsely stated that he was not delinquent on any federal debts, when, in fact, as of the date of the application he owed individual income taxes and TFRPs.

11

7. The Government

   a. <u>Acceptance of Responsibility.</u> The government agrees not to oppose the defendant's request for a two-level reduction of his offense level for acceptance of responsibility under § 3E1.1(a) of the Sentencing Guidelines. However, the government reserves the right to object to the defendant's request if it subsequently learns of conduct by him that is inconsistent with the criteria set forth in the Commentary to § 3E1.1. Should the Court grant a two-level reduction as provided herein, the government states that the defendant has assisted authorities in the investigation or prosecution of his own misconduct by timely notifying it of his intention to enter a guilty plea, thereby permitting the Government to avoid preparing for trial, and hereby moves the Court to grant an additional one-level reduction if the adjusted offense level is 16 or greater.

   b. <u>§ 1B1.8 Protection for the Proffered/Cooperative Statements.</u> The government agrees that information provided by the defendant through the defendant's proffer will not be used by the government to enhance the defendant's sentence, in accordance with Sentencing Guidelines § 1B1.8, and according to the terms of the written agreement entered into between the parties immediately prior to the proffer. It is expressly understood, however, that such information may be used by the government at sentencing if the defendant takes a position at sentencing that

contradicts information provided by the defendant pursuant to this agreement or any proffer agreement.

    8.    <u>The Sentencing Guidelines</u>.

        a.    The defendant understands that, although the United States Sentencing Guidelines (the "Guidelines") are not mandatory, the Court must consult the Guidelines and take them into account when sentencing the defendant. The defendant understands that the Court, with the aid of the presentence report, will determine the facts and calculations relevant to sentencing. The defendant understands that the defendant and the defendant's attorney will have the opportunity to review the presentence report and to make objections, suggestions, and recommendations concerning the calculation of the Guideline range and the sentence to be imposed. The defendant further understands that the Court shall make the final determination of the Guideline range that applies in this case, and may impose a sentence within, above, or below the Guideline range, subject to the statutory maximum and minimum penalties described elsewhere in this Agreement. The defendant further understands that disagreement with the Guideline range or sentence shall not constitute a basis for withdrawal of the plea.

        b.    Notwithstanding the above, the parties agree and stipulate that the Court should apply the following provisions in calculating the sentencing range under the Guidelines:

13

i.   *Tax Loss* - The total tax loss that was the object of the offense to which the defendant is pleading guilty including relevant conduct is more than $550,000 but less than $3.5 million. The parties will present evidence and argument at sentencing to permit the Court to determine the loss for Guidelines purposes. If the Court finds that the loss is more than $550,000 but less than $1.5 million, as the defendant will argue, the Base Offense Level will be 20. U.S.S.G. §§ 2T1.1(a)(1), 2T4.1. If the Court finds that the loss is more than $1.5 million but less than $3.5 million, as the government will argue, the Base Offense Level will be 22. Id.

ii.   *Specific Offense Characteristics* - The government will argue that the Base Offense Level is increased by two levels because the offense involved sophisticated means, pursuant to U.S.S.G. § 2T1.1(b)(2).

iii.   *Adjustment for Obstruction of Justice* - The government will argue that the two-level enhancement for obstruction of justice set forth in U.S.S.G. § 3C1.1 applies based exclusively upon false statements the defendant made to special agents of IRS Criminal Investigation (IRS-CI) during their May 11, 2016 interview of the defendant as part of the criminal investigation of the defendant's tax misconduct.

iv.   *Total Offense Level* - If the defendant receives a three-level reduction in offense level for acceptance of responsibility, and the Court finds the

loss to be greater than $1.5 million and applies both the two-level enhancement for sophisticated means and the two-level enhancement for obstruction of justice, the defendant's Total Offense Level will be 23.

    v. *Advisory Guidelines Range* - The parties anticipate that the defendant will be in Criminal History Category I. The advisory Guidelines range for a Total Offense Level of 23 and a Criminal History Category I is 46-57 months.

The defendant understands that neither the United States Probation Office nor the Court is bound by any stipulation in this agreement, and that the Court, with the aid of the presentence report, will determine the facts and calculations relevant to sentencing. Both the parties are free to supplement the facts stipulated to in this agreement by supplying relevant information to the United States Probation Office and the Court, and to correct any and all factual misstatements relating to the calculation of the sentence. Defendant understands that if the Court finds facts or reaches conclusions different from those in any stipulation contained in this agreement, defendant cannot, for that reason alone, withdraw his guilty plea.

  9. <u>Waiver of Constitutional Rights</u>. By pleading guilty, the defendant gives up the right to persist in a plea of not guilty and the right to a speedy and public trial by jury or by the Court. As a result of the defendant's guilty pleas, there will be

15

no trial. At any trial, whether by jury or by the Court, the defendant would have had the following rights:

    a. The right to the assistance of counsel, including, if the defendant could not afford an attorney, the right to have the Court appoint an attorney to represent the defendant.

    b. The right to be presumed innocent and to have the burden of proof placed on the Government to prove the defendant guilty beyond a reasonable doubt.

    c. The right to confront and cross-examine witnesses against the defendant.

    d. The right, if the defendant wished, to testify on the defendant's own behalf and present evidence in opposition to the charges, including the right to call witnesses and to subpoena those witnesses to testify.

    e. The right not to be compelled to testify, and, if the defendant chose not to testify or present evidence, to have that choice not be used against the defendant.

    f. By pleading guilty, the defendant also gives up any and all rights to pursue in this Court or on appeal any affirmative defenses, Fourth Amendment or Fifth Amendment claims, and other pretrial motions that have been filed or could be filed.

10. <u>The Court is not a Party to this Agreement.</u> The defendant understands that the Court is not a party to this agreement and is under no obligation to accept any recommendation by the government or the parties regarding the sentence

to be imposed. The defendant further understands that, even if the Court ignores such a recommendation or imposes any sentence up to the maximum established by statute, the defendant cannot, for that reason, withdraw his guilty plea, and he will remain bound to fulfill all his obligations under this agreement. The defendant understands that no one - not the prosecutors, the defendant's attorneys, or the Court - can make a binding prediction or promise regarding the sentence the defendant will receive, except that it will be within the statutory maximum.

11. <u>This Agreement is Limited to the Parties</u>. This agreement is limited to the U.S. Attorney's Office for the Western District of Michigan and the Department of Justice, Tax Division, and cannot bind any other federal, state or local prosecuting, administrative or regulatory authority. This agreement applies only to crimes committed by the defendant. This agreement does not apply to or preclude any past, present, or future forfeiture or civil actions.

12. <u>Consequences of Breach</u>. If the defendant breaches any provision of this agreement, including any promise of cooperation, whether before or after sentencing, the United States shall have the right to terminate this agreement, or deny any or all benefits to which the defendant would otherwise be entitled under the terms of this agreement. In the event that the United States elects to terminate this agreement, the agreement shall be considered null and void, and the parties shall return to the same position they were in prior to the execution of this agreement, as though no

agreement ever existed. In such an event, the defendant shall remain liable for prosecution on all original charges, and the United States shall be free to bring such additional charges as the law and facts warrant. The defendant further agrees to waive and forever give up his right to raise any claim that such a prosecution is time-barred if the prosecution is brought within one year of the breach that gives rise to the termination of this agreement.

13. <u>Hyde Waiver</u>. The defendant acknowledges, by his voluntary admission of guilt, that the position of the government in this case is not vexatious, frivolous, or in bad faith, and he hereby disclaims and waives any right to make any claim for attorney fees.

14. <u>FOIA Requests</u>. The defendant hereby waives all rights, whether asserted directly or by a representative, to request or receive from any department or agency of the United States any records pertaining to the investigation or prosecution of this case, including without limitation any records that may be sought under the Freedom of Information Act, 5 U.S.C. § 552, or the Privacy Act of 1974, 5 U.S.C. § 552a.

15. <u>This is the Complete Agreement.</u>   This agreement has been entered into by both sides freely, knowingly, and voluntarily, and it incorporates the complete understanding between the parties. No other promises have been made, nor may any additional agreements, understandings or conditions be entered into unless in a writing signed by all parties or on the record in open court.

ANDREW BYERLY BIRGE
United States Attorney

4/13/22
Date

TIMOTHY P. VERHEY
Assistant United States Attorney

MELISSA S. SISKIND
Trial Attorney, Tax Division

I have read this agreement and carefully discussed every part of it with my attorney. I understand the terms of this agreement, and I voluntarily agree to those terms. My attorney has advised me of my rights, of possible defenses, of the sentencing provisions, and of the consequences of entering into this agreement. No promises or inducements have been made to me other than those contained in this agreement. No one has threatened or forced me in any way to enter into this agreement. Finally, I am satisfied with the representation of my attorney in this matter.

4-8-22
Date

SCOTT ALLAN CHAPPELLE
Defendant

I am Scott Chappelle's attorney. I have carefully discussed every part of this agreement with my client. Further, I have fully advised my client of his rights, of possible defenses, of the sentencing provisions, and of the consequences of entering into this agreement. To my knowledge, my client's decision to enter into this agreement is an informed and voluntary one.

_April 8, 2022_
Date

_Tim Belevetz_
TIMOTHY BELEVETZ
Attorney for the Defendant